IRENE M. HARTSTONE, APPELLANT, *v.*
GEORGE D. HARTSTONE, RESPONDENT.

No. 4181

February 17, 1959                    335 P.2d 431

*R. K. Wittenberg,* of Reno, for Appellant.

*Adams, Reed & Bowen* and *John P. Thatcher,* all of Reno, for Respondent.

## OPINION

*Per Curiam:*

Respondent docketed the above appeal in order to interpose his motion to dismiss. Rule 75(j) NRCP. Appellant has filed her opposition to the motion, together with her countermotion for an extension of time within which to file the record on appeal. From the affidavits of both parties we compile the following chronology of events:

April 18, 1958, decree of divorce entered in favor of respondent.

May 19, 1958, notice of appeal filed.

June 28, 1958, last day under Rule 73(g) to docket the appeal and file the record on appeal in this court.

June 28, 1958, last day under Rule 73(g) on which the district court might have extended the time for filing the record and docketing the appeal.

August 18, 1958, last day under Rule 73(g) to which the district court could in any event have extended time for such docketing and filing.

January 28, 1959, respondent's motion to dismiss filed.

February 11, 1959, appellant's motion to extend time for filing record on appeal filed.

It will thus be seen that appellant's motion to extend her time is made nine months less eight days after the filing of her appeal, six months less eight days after the expiration of any jurisdiction in the trial court to extend her time, and some six and one-half months after the district court under rule 73(g) could have granted any extension.

It appears that shortly after the filing of the notice of appeal, counsel for respondent informally agreed that respondent would pay the cost of the reporter's transcript and the preparation of the record on appeal; that appellant's counsel ordered the transcript, which was completed on July 22, 1958, at a charge of $243. The affidavit of appellant's counsel states that he then discovered that a restraining order signed by the court September 20, 1957, had never been filed, and that counsel for respondent advised that they would check on this defect of the record, whereupon appellant "took no further immediate step with relation to the matter." The affidavit of respondent's counsel states that he forthwith filed the restraining order as of the date on which it was made. (No intimation is given the court as to the nature of the restraining order or its significance in connection with the appeal.) Counsel for appellant admits "that no specific oral stipulation was made for an extension of time" but that "such was implied by the fact that all counsel knew that it would take longer

than the minimum period for the record to be prepared, particularly in light of the admitted defect of the record."

The affidavit of respondent's attorney is to the effect that respondent has been and is now willing to pay for the cost of the transcript, but that neither he nor respondent has ever been billed for same or requested to pay it and did not know that it had been ordered or secured until respondent filed his motion to dismiss, although the transcript had been delivered to appellant's counsel on July 22, 1958; and that the record on appeal has not yet been prepared. He adds that there never was an oral stipulation for an extension of time "either specific or implied"; that on August 8, 1958, he telephoned appellant's attorney advising him that he was in default; that counsel for appellant advised that he would call him back, but never further communicated with him until respondent filed his motion to dismiss on January 28, 1959.

Under the foregoing circumstances it would appear that the showing of appellant is insufficient to constitute excusable neglect, that appellant's motion for an extension of time to file the record should be denied and that respondent's motion to dismiss the appeal should be granted. Dreyer v. Dreyer, 74 Nev. 167, 325 P.2d 705.

Appeal dismissed.